UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| THOMAS MOSLEY,<br>    Plaintiff,<br><br>v.<br><br>RHODE ISLAND DEPARTMENT OF CORRECTIONS; WAYNE T. SALISBURY, JR.; BARRY WEINER; LYNNE CORRY; RACHEL BRAY; CAITLIN BOUCHARD; NICHOLAS FERRO; AGNIESKA JANICKA; LYNSEY MCNAMARA; MAEGAN RUSSO; JOHN ADAMS; CASEY CULLINAN; ADERITO FORTES; MICHAEL GASPAR; MICHAEL LANOWY; JOSHUA MACOMBER; GLENN MCCARTNEY; HERBERT MCDANIEL; JOHN MOSON; DONALD PANARELLO; JOSEPH PELLETIER; STEVEN SARITELLI; RICHARD SOPER; DANIEL TYLER; and JOHN DOE 1-5.<br>    Defendants. | C.A. No. 24-299-JJM-LDA |

ORDER

Thomas Mosley alleges that he was subjected to prolonged periods of extreme isolation while in the care of the Rhode Island Department of Corrections ("RIDOC"), which caused him severe psychological harm given his recurring mental health crises. Mr. Mosely brings this seven-count Complaint: Counts I, II, and III are federal-law claims under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights, alleging deliberate indifference to unconstitutional conditions, and excessive force; Count IV is a federal-law claim under the Americans with Disabilities Act ("ADA") for disability

discrimination; Count V is a state-law claim brought under the Rhode Island Constitution Article I, section 8; Count VI and VII are state-law claims for negligent supervision and training and battery. ECF No. 1.

The State Defendants are Wayne T. Salisbury, Jr., Rui Diniz, Barry Weiner, Lynne Corry, Rachel Bray, Caitlin Bouchard, Nicolas Ferro, Lynsey McNamara, Maegan Russo, John Adams, Casey Cullinan, Aderito Fortes, Michael Gasper, Michael Lanoway, Joshua Macomber, Glenn McCartney, Herbert McDaniel, John Moson, Donald Panarello, Joseph Pelletier, Richard Soper, and Daniel Tyler, in their individual and official capacities. Defendant Dr. Agnieszka Janicka is only named in Count I. The Court will collectively refer to them as "Defendants." Defendants move to dismiss, asserting that there is no private cause of action under the Rhode Island state constitution; that ADA claims cannot be brought against individuals; that there is not sufficient evidence of deliberate indifference to support the Eighth Amendment claims; and that Mr. Mosley cannot obtain damages against Defendants in their official capacities. ECF Nos. 15, 16.

*Facts Alleged*

Mr. Mosley has been detained at the Adult Correctional Facilities ("ACI") since 2015[1] and is serving two consecutive life sentences. Before he was incarcerated,

---

[1] The State Defendants raise the issue of mootness in their reply, asserting "upon information and belief" that Mr. Mosley has been moved out of state to Connecticut for a time. Mr. Mosley correctly points out the argument for mootness is based on an asserted fact that is outside the Complaint. Because a motion to dismiss must be assessed solely based on the facts asserted in the Complaint, the Court cannot consider this assertion in analyzing these motions. *See Trans–Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

Mr. Mosley had experienced a childhood marked by extreme deprivations and physical abuse, and he had been institutionalized for extensive periods of time to treat mental illness. Since his incarceration Mr. Mosley has often experienced depression, auditory hallucinations, paranoia, and sleeplessness; he has reported experiencing suicidal ideation; and he has undertaken acts of self-harm.

RIDOC was aware of this history, which was contained in Mr. Mosley's medical files. RIDOC's policies provide that a qualified mental health professional must screen any inmate who is seriously and persistently mentally ill to assess whether disciplinary segregation is contraindicated for their mental health and shall also review each disciplinary report to assess whether punishment would be inappropriate because the inmate's behaviors resulted from mental illness. Despite their knowledge, RIDOC did not provide Mr. Mosley appropriate medical treatment but undertook and approved many actions that exacerbated his condition.

For example, since 2017, while in the High Security Center, RIDOC officials placed Mr. Mosley in disciplinary segregation and in crisis management status for periods of time totaling over a year. These restrictions caused "him substantial psychological harm, and he began to experience exactly the symptoms known to result from the imposition of solitary confinement on persons with severe and persistent mental illness." ECF No. 18 at 3. Three years later, Mr. Mosley "experienced recurrent mental health breakdowns, in which he lost the ability to control his behavior and committed numerous acts of self-harm and undertook other behaviors symptomatic of mental illness." *Id.* He swallowed AA batteries; banged

3

his head on the wall on multiple occasions; wrote foul language in blood on the wall of his cell; defecated on the floor and smeared it on himself and the wall on several occasions; swallowed a pen; and on several other occasions, he told RIDOC mental health staff and corrections officers that he was suicidal. *Id.* at 3-4.

RIDOC's mental health staff not only did not intervene to assert that Mr. Mosley's harmful actions (such as swallowing batteries and a pen, or smearing feces on himself) were the result of his mental illnesses, but they affirmatively told the disciplinary board that these behaviors were not symptomatic of mental illness. In response to these behaviors, mental health staff suggested inadequate and inappropriate "treatment" that included sudoku puzzles, workbook exercises, and deep breathing exercises. They have suggested that he "look on the bright side" and "adopt a more positive narrative."[2]

Instead of mental health intervention, RIDOC corrections officers responded to Mr. Mosley's behaviors by using excessive force against him rather than seeking help from mental health staff. For example, corrections officers sprayed Mr. Mosley with pepper spray when he defecated on the floor and when he threatened suicide; when Mr. Mosley swallowed a battery in response to a mental health breakdown, officers did not seek help from mental health staff but forcibly extracted Mr. Mosley from his cell and broke his arm; corrections officers strapped Mr. Mosley to a restraint chair for prolonged periods during his time of mental distress rather than seeking

---

[2] Defendants finally adopted a treatment plan for Mr. Mosley in January 2023.

help from mental health staff; and RIDOC imposed lengthy periods of disciplinary segregation as further punishment for these same behaviors. *Id.* at 4-5.

### *Standard*

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must present facts that make her claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To decide plausibility, the Court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). When reviewing the complaint, the court must draw all inferences in favor of the plaintiffs. *Abdallah v. Bain Cap. LLC*, 752 F.3d 114, 117 (1st Cir. 2014).

Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* To state a plausible claim, a complaint need not detail factual allegations but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) (internal quotation marks omitted) (citation omitted) ("[C]ombined

allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

*Legal Analysis*

Defendants argue that (1) the state constitution does not provide a private cause of action; (2) the ADA claim should be dismissed because it cannot be applied to individuals; (3) the Eighth Amendment claim is not properly pleaded; and (4) damages cannot be obtained against individuals in their official capacity. ECF No. 15. Defendant Dr. Janicka also moves to dismiss Count I. ECF No. 16. Mr. Mosley filed a joint objection to both motions. ECF No. 18. Defendants replied (ECF No. 19) and Mr. Mosley filed a sur-reply. ECF No. 22. The Court now considers these arguments to resolve these motions.

I. State Constitutional Claims (Count V)

Defendants argues that Mr. Mosely has no claim for damages under the Rhode Island Constitution. Mr. Mosley points out that he is seeking injunctive and declaratory relief under the state constitution therefore there is no need for the Court to decide whether state law allows damages as well. The Court agrees; Mr. Mosley can seek injunctive and declaratory relief under the state constitution provisions pleaded and therefore the Court DENIES Defendants' Motion to Dismiss Count V.

II. ADA Claim (Count IV)

A plaintiff states a disability discrimination claim under the ADA by setting forth factual allegations sufficient to meet three elements: (1) they are a "qualified individual with a disability"; (2) they were "excluded from participation in, or denied

6

the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against"; and (3) this exclusion, denial of benefits, or discrimination was "by reason of [his] disability." *Sosa v. Massachusetts Dep't of Correction*, 80 F.4th 15, 30 (1st Cir. 2023) (quoting *Snell v. Neville*, 998 F.3d 474, 499 (1st Cir. 2021)).

Defendants do not challenge that Mr. Mosley is a "qualified individual with a disability" in light of his Post-Traumatic Stress Disorder ("PTSD"), anxiety disorder, depressive disorder, and borderline personality disorder diagnoses. Under Title II of the ADA, a "qualified individual with a disability" shall not, "by reason of" that disability, be "excluded from participation in or be denied the benefits of the services, programs or activities" provided by a "public entity" or otherwise "be subjected to discrimination" by such an entity. 42 U.S.C. § 1232. State prisons are public entities for Title II purposes.[3] *See United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998)).

Defendants move to dismiss Mr. Mosley's ADA claim, arguing that it is "completely generalized." ECF No. 15-1 at 13. A review of the Complaint establishes that Mr. Mosley has plausibly alleged that he was denied benefits and that this denial stemmed from his disability. The Complaint specifically recounts the many times when Defendants used force against Mr. Mosley and imposed prolonged periods of

---

[3] Defendants challenge the ADA's applicability to them as individuals even though the First Circuit has not yet opined on this. *See* ECF No. 15-1 at 11-13. But because Mr. Mosley sued the RIDOC, a governmental entity, the Court does not need to reach the yet-to-be-determined issue of whether the ADA applies to individual defendants.

solitary confinement and disciplinary confinement him because of his disabilities. The Complaint further alleges that in imposing prolonged periods of solitary confinement as punishment for his behaviors, RIDOC deprived him of numerous specific benefits and programs. In addition, the Complaint sets out facts that establish that RIDOC failed to make reasonable accommodations for Mr. Mosley's known disabilities. The Court thus DENIES Defendants' Motion to Dismiss Count IV.

III.   Eight Amendment Claims (Counts I, II, and III)

A review of the facts alleged in the Complaint shows that Mr. Mosley has plausibly alleged sufficient facts to establish objective and subjective deliberate indifference under the Eighth Amendment. Under the Eighth Amendment, prisoners cannot be treated with "deliberate indifference to a substantial risk of serious harm to health." *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011). "[A]n Eighth Amendment claim of 'cruel and unusual punishment' based on medical mistreatment requires more than 'an inadvertent failure to provide adequate medical care' and must involve 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)); *Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991) ("prison suicides are analogous to the failure to provide medical care").

Mr. Mosley has alleged that the RIDOC and its agents knew that he had a history of severe mental health issues. Mr. Mosley's diagnosed conditions give rise

8

to serious medical needs that are sufficient to satisfy the objective prong of a deliberate indifference claim. *See, e.g., DePaola v. Clarke*, 884 F.3d 481, 488 (4th Cir. 2018) (holding that severe depression, hallucinations, acute anxiety, and feelings of hopelessness and helplessness are serious medical needs under the Eighth Amendment).

The Complaint sets out voluminous factual allegations that are sufficient to satisfy the subjective element of a deliberate indifference claim against all the individual Defendants: (1) they each had extensive knowledge of Mr. Mosley's serious mental health needs but (2) they each deliberately disregarded these needs and failed to take actions to address them and instead took punitive actions that further injured Mr. Mosley. Accordingly, the Complaint states a claim of deliberate indifference against each Defendant and therefore the Court DENIES Defendants' Motion to Dismiss as to Counts I, II, and III.

## IV. Damages Against Defendants in Their Official Capacity

The parties agree that damages cannot be obtained from the Defendants in their official capacities—only in their individual capacities.

## V. Dr. Agnieszka Janicka's Motion to Dismiss (Count I)

Defendant Dr. Janicka had extensive knowledge of Mr. Mosley's serious mental health needs. Dr. Janicka is a RIDOC psychiatrist who worked with Mr. Mosley for years and had access to his mental health records. As a psychiatrist who diagnosed Mr. Mosley, she was familiar with his records and therefore was aware of his history of childhood abuse, suicidal ideation, auditory hallucinations, repeated

acts of self-harm, multiple diagnoses, prolonged periods of time spent in solitary confinement, the changing medications given to him that did not correspond to this diagnoses, and the changing diagnoses made of Mr. Mosley without diagnostic criteria. In addition to her knowledge of Mr. Mosley's psychological history and history of treatment from his file, Dr. Janicka had knowledge of Mr. Mosley's mental health needs from her direct contact with him. For instance, Dr. Janicka recorded that Mr. Mosley was experiencing an episode of increased anxiety, which seemed to occur "every couple of months where he starts to act out and states he cannot control himself." The Court finds that Mr. Mosely has stated a plausible claim against Dr. Janicka in Count I. Thus, the Court DENIES Defendant Dr. Agnieszka Janicka's Motion to Dismiss. ECF No. 16.

## VI. Conclusion

The Court DENIES the State Defendants' Motion to Dismiss and Defendant Dr. Agnieszka Janicka's Motion to Dismiss. ECF Nos. 15, 16.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

April 2, 2025